UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARQUISE LOCKHART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16cv63 SNLJ |
| | ) |
| CYNTHIA REESE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff, *pro se*, filed this 42 U.S.C. § 1983 claim for violations of his constitutional rights against defendant correctional officers and others at the Southeast Correctional Center, where plaintiff is incarcerated. Defendants filed a motion for summary judgment on May 12, 2017. Plaintiff sought and received extensions of time in which to respond to defendants' motion. The motion has now been fully briefed and is ready for disposition.

**I.    Factual Background**

The following facts are undisputed except where indicated.[1] During all times relevant to the complaint, plaintiff was incarcerated at the Southeast Correctional Center ("SECC"). Defendants are SECC employees Neva Jane Buchanan (Corrections Supervisor I), Gregory Hancock (Corrections Supervisor I), John Mills (Corrections Officer I), and Corey Sisk (Corrections Officer II).

---

[1] Plaintiff denies some of defendants' statements of fact without supporting his denial with a citation or other explanation.

1

Plaintiff's medical records show that he has bipolar disorder. On April 5, 2015 at approximately 9:30 p.m., plaintiff declared to SECC staff that he was homicidal and suicidal. At the same time, 11 or 12 other offenders in the same housing unit also declared they were homicidal. Plaintiff was placed on a restraint bench because there were not enough suicide cells; however, plaintiff states without support that his "initial cell" was a suicide cell. Plaintiff claims he was left on the restraint bench for 17 hours. Defendants do not specify how long plaintiff was on the restraint bench, but they state that medical personnel did restraint checks and gave plaintiff the opportunity to use the restroom and drink water every two hours. Plaintiff denies that the restraints were checked or that he was given water and restroom breaks, and he says surveillance video will prove that no such checks or opportunities occurred. Notably, there is no surveillance video from that time period because no use of force occurred to trigger preservation of the video, which is recorded over every 30 days. Plaintiff fails to offer any other support for his contention that these checks occurred. The parties agree that mental health personnel assessed plaintiff while he was on the restraint bench.

Around that same time, approximately 30 offenders had gone on suicide watch. Defendants say this appeared to be the result of some organized disobedience; plaintiff denies that he organized it. Because of the large number of individuals on suicide watch, the subject offenders were assessed and then placed back in their cells after the cells were stripped of property.

Plaintiff was assessed at 12:30 p.m. on April 6. Mental health staff noted

No overt indication suggesting a psychosis or severe mood disorder. No

> self injurious behavior noted. [Plaintiff] was threatening harm to staff. [Plaintiff] seems to have freely chosen to involve himself in a general incident of organized disobedience among a group of offenders in ad/seg.

(Mental Health Record at 791.) Plaintiff denies that statement but provides no support for his denial.

Plaintiff was placed on full suicide watch as a precautionary measure, even though it appeared he made a "lucid decision to engage in maladaptive behaviors." (*Id.*) Plaintiff denies that he made a lucid decision to engage in any maladaptive behaviors. Plaintiff and another offender, Ronnie Allen, were placed in a two-man cell on April 7 because they both declared they were suicidal and it was necessary to put more than one person in a cell due to what defendants describe as the ongoing organized disobedience. Plaintiff and Allen were not declared enemies, plaintiff had not asked for protective custody, and both were on full suicide watch. Plaintiff adds, however, that both he and Allen had declared they were homicidal. Further, plaintiff says he asked the defendants --- Hancock, Mills, and Buchanan --- for protective custody after seeing that he would be placed in a cell with Allen. Plaintiff says that Hancock told him "you'll be alright" and then told Allen to "beat his ass for me," and then Mills closed the door.

Plaintiff was assessed by mental health again on April 7 at 2:00 p.m.. Plaintiff presented as angry and "willing to engage in gestures of self harm to prove a point." (*Id.* at 792.) Plaintiff denies he was trying to "prove a point."

At approximately 9:30 p.m., plaintiff and his cellmate Allen got into a physical altercation. Plaintiff alleges that Allen attacked him and that the altercation lasted five to ten minutes before defendant Mills observed the altercation and ordered them to stop

fighting. Mills says that the offenders continued to fight, so he sprayed a short blast of pepper spray through the food port. Plaintiff was taken to a restraint bench where defendants say he was assessed by a nurse (supported by medical records), but plaintiff says he was left for two hours and not assessed by a nurse. Defendants state plaintiff was placed in a dry cell at 10:45 p.m. under suicide watch; plaintiff admits this is true, which suggests that his estimate of two hours on the restraint bench is not correct. Plaintiff states that when he was removed from the restraint bench, he was put into a "dry cell" instead of in a suicide-watch cell. A "dry cell" is intended to be used when prisoners are suspected of having ingested or are otherwise carrying contraband. Plaintiff says he was there for approximately 22 hours and was not allowed to wash himself. Defendants say that mental health personnel assessed plaintiff the next morning at 10:15 a.m. and released him from suicide watch.

Plaintiff brought this lawsuit under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights under the United States Constitution. He claims that his constitutional rights were violated when defendant Buchanan, Hancock, and Sisk failed to protect him from the assault by offender Allen. The Court also construes plaintiff's complaint as claiming unconstitutional conditions of confinement related to his time on the restraint bench and in the "dry cell" while on suicide watch. Finally, plaintiff claims defendant Mills used excessive force by using pepper spray to stop the fight between plaintiff and his cellmate. Defendants have moved for summary judgment.

## II. Legal Standard

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). However, the nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). With these principles in mind, the Court turns to the discussion.

## III. Discussion

### A. Failure to Protect

A violation of the Eighth Amendment based on a failure to protect involves two inquiries. First, the plaintiff must show that the conditions that result from the failure to protect "pose a substantial risk of serious harm." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "This objective requirement ensures that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." *Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir.1996). "Second, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates." *Lenz*, 490 F.3d at 995.

Under the deliberate indifference standard, no liability attaches unless the prison official "*knows of* and disregards an excessive risk to inmate health and safety." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837) (emphasis in original).

Plaintiff alleges that he told defendants he feared being in the cell with Allen due to plaintiff's own state of mind. Plaintiff states he was ignored and that defendant Buchanan told Allen to "beat his ass for me." Defendants contend that these facts do not show that defendants knew there was a substantial risk of serious harm to plaintiff. Even if plaintiff did say he was uncomfortable due to his own state of mind, defendants say he gave no indication that there was an existing problem between himself and Allen. Plaintiff does not dispute that he and Allen were not declared enemies. Further, the facts

6

show that defendants acted to break up the fight and obtain medical services for plaintiff, which belies plaintiff's unsupported suggestion that defendants intended for the fight to occur. Plaintiffs' medical records show he was evaluated, and the video of plaintiff and Allen being removed from their cells shows neither inmate in distress.

However, it appears that plaintiff has not seen the video and has not had an opportunity to rebut that evidence. The Court will order defendants to permit plaintiff the opportunity to review the video within 30 days. Then plaintiff will have 14 days in which to file a supplemental memorandum responding to the video. Defendants may then have 7 days to file a reply.

With respect to defendant Sisk, he was not on duty and could not have placed plaintiff in the cell with Allen. Although plaintiff states that Sisk was on duty, the defendants supplied Shift Duty Schedules for the relevant dates, and Sisk is not on the schedules. Plaintiff does not mention Sisk's involvement in his declaration but instead states that Hancock, Mills, and Buchanan were responsible for putting Allen in his cell. Summary judgment must be granted to Sisk, but the Court will hold in abeyance the motion for summary judgment on the matter of the failure to protect claim against defendants Buchanan, Mills, and Hancock.

### B. Conditions of Confinement

Government officials have a duty under the Eighth Amendment to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order to prevail on his condition of confinement claim, plaintiff must show that the conditions constituted a substantial risk of serious harm or a deprivation of the minimal

civilized measure of life's necessities. *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005); *Webb v. Lawrence County*, 144 F.3d 1131, 1135 (8th Cir. 1998); *Frye v. Pettis County Sheriff Dept.*, 41 Fed. Appx. 906, 2002 WL 1726919, *1 (8th Cir. 2002). The Constitution does not mandate comfortable prisons. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Prison conditions that create temporary inconveniences or discomforts or that make confinement unpleasant do not constitute Eighth Amendment violations. *White v. Nix*, 805 F. Supp. 721, 724 (S.D. Iowa 1992).

As for plaintiff's claim that he was forced to remain on the restraint bench for seventeen hours, defendants contend that the sheer number of individuals who declared suicidal tendencies required that some inmates be placed on restraint benches because there were not enough suicide watch cells. Plaintiff was seen by medical staff for restraint checks and was given restroom/water breaks every two hours. The only reason plaintiff was on the restraint bench was that plaintiff had been involved in the organized disobedience and was found to have deliberately joined a large group of inmates who declared suicidal tendencies in order to disrupt the prison. In light of the extreme disruption to the prison that was caused by a *en masse* declaration of suicidal ideations, the placement of plaintiff on a restraint bench for an extended time cannot be considered an extreme deprivation that implicates constitutional rights. Plaintiff had indicated an intention to kill himself; defendants had nowhere safe to house plaintiff and many other similarly situated prisoners; the restraint bench was an adequate and effective short-term solution. Although plaintiff disputes the frequency of the restraint checks and restroom

breaks, the short duration and benign nature of any discomfort that may have occurred does not rise to a constitutional violation.

Similarly, plaintiff's claim that being celled in a dry cell while on suicide watch constituted unconstitutional conditions of confinement also fails. Defendants needed to house plaintiff in a secure area, and plaintiff admits he was released from suicide watch less than 12 hours after being placed in the dry cell. Plaintiff says the conditions of the cell were "filthy." However, plaintiff offers no details, and the Eighth Circuit is clear that "analysis of confinement conditions must be based on the totality of the circumstances," and here plaintiff's allegations do not rise to the level of a constitutional violation. *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Summary judgment will be denied as to plaintiff's conditions of confinement claim.

### C. Excessive Force

The Eighth Amendment protects incarcerated prisoners from "cruel and unusual punishment" by forbidding the "unnecessary and wanton infliction of pain" at the hands of corrections officers. U.S. Const. Amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The "core judicial inquiry" for an excessive force claim is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 6-7. "Resolution of the constitutional issue turns on the circumstances of the individual case." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002). "The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary, and malicious." *Id.* at 873. Relevant

9

factors include the need for force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *See, e.g.*, *Whitley*, 475 U.S. at 321; *Treats*, 308 F.3d at 872.

To establish a claim for the excessive use of force, plaintiff must demonstrate that the force was used maliciously and sadistically to cause harm, rather than in a good faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 6-7. Plaintiff claims that defendant Mills used an excessive amount of pepper spray to stop the fight between plaintiff and Allen. Plaintiff admits he was fighting with Allen before being pepper sprayed. Plaintiff denies that the offenders disobeyed Mills's directive to stop fighting and also that Mills "sprayed a short blast of pepper spray through the food port slot," but plaintiff offers no support for his denials, and the facts are thus deemed admitted. *See* Fed. R. Civ. P. 56(c)(1). Furthermore, defendant Mills had limited means with which to stop the fight between plaintiff and Allen. Plaintiff's medical records further reflect that the force used was not excessive, and the video of plaintiff and Allen being removed from their cells shows neither inmate in distress and no signs of any of the injuries plaintiff says he suffered. Moreover, plaintiff does not allege any injuries resulting from the pepper spray. Because there is no evidence that the use of pepper spray was malicious or sadistic, the Court will grant summary judgment to defendant Mills on plaintiff's excessive force claim

## IV. Conclusion

The Court will grant summary judgment to defendant Sisk. Further, the Court will grant summary judgment to defendants on the excessive force claim and the conditions of

confinement claim. Plaintiff will be permitted to view the Surveillance Video from April 5-6, 2015 that was filed with the Court on January 12, 2018, and then plaintiff may respond to the video and the fact that neither prisoner in the video appears to have suffered any injury. The matter of defendants' summary judgment motion on plaintiff's failure to protect claim will therefore be held in abeyance pending additional briefing.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (#30) is GRANTED in part and HELD IN ABEYANCE in part.

**IT IS FURTHER ORDERED** that summary judgment is GRANTED to defendants as to plaintiff's claims for excessive force and conditions of confinement claims.

**IT IS FURTHER ORDERED** that summary judgment is GRANTED to defendant Sisk.

**IT IS FINALLY ORDERED** that defendants shall, by **March 5, 2018**, arrange for plaintiff to view the Surveillance Video from April 5-6, 2015 that was filed with the Court on January 12, 2018; plaintiff shall then have until **March 19, 2018** by which to file supplemental briefing; defendants shall have until **April 2, 2018** to reply.

Dated this  2nd  day of February, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE